UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARC SALAHUDDIN,         )     Case No. 1:10CV1294
                                 )
          Petitioner,       )     JUDGE JOHN R. ADAMS
                                 )
       v.                )     Magistrate Judge George J. Limbert
                                 )
TERRY TIBBALS[1], Warden,     )
                                 )
          Respondent.     )     **Report and Recommendation**
                                 )     **of Magistrate Judge**

On June 10, 2010, Petitioner Marc Salahuddin ("Petitioner"), represented by counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred as a result of his conviction and sentence in the Cuyahoga County, Ohio Court of Common Pleas, for seven counts of rape of a child under the age of thirteen, in violation of R.C. 2907.02(A)(1)(b), seven counts of gross sexual imposition of a child under the age of thirteen, in violation of R.C. 2907.05(A)(4), one count of rape, in violation of R.C. 2907.02(A)(2), and two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(1). On September 24, 2010, Respondent Terry Tibbals ("Respondent"), Warden of Mansfield Correctional Institution, where Petitioner is incarcerated, filed an answer/return of writ. ECF Dkt. #6. On January 5, 2011, after four extensions of time were granted, Petitioner filed his traverse. ECF Dkt. #13. For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

---

[1]Petitioner is housed at Mansfield Correctional Institution, where Terry Tibbals is the warden. *See www.drc.ohio.gov* "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . ." *Rumsfeld v. Padilla,* 542 U.S. 426, 435 (2004). Accordingly, the Petition should be amended to name Terry Tibbals as respondent.

## I.     SYNOPSIS OF THE FACTS

The Eighth District Court of Appeals of Ohio set forth the relevant facts and procedural history of this case on direct appeal.  ECF Dkt. #6-1 at 325.[2]  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> {¶ 2} The charges in this case are based on appellant allegedly repeatedly raping his stepdaughter, I.S., FN1 from 1990 through 1993, when she was 11 to 14 years old. In 1990, appellant married Cassandra Richardson. Cassandra had a daughter, I.S., who was born in November 1978. According to I.S., appellant raped her multiple times at the family's apartment on West 22nd Street in Cleveland, subsequently raped her at another apartment on the corner of Lee Road and Scottsdale Boulevard, and at a third location in an apartment on Warrensville Center Road. Because of the sensitive nature of this case, additional facts relating to the sexual contact and conduct will be discussed as needed to address appellant's assignments of error.
>
> FN1. The victim is referred to herein by her initials in accordance with this court's established policy regarding nondisclosure of identities in cases involving sexual offenses.
>
> {¶ 3} Starting in 1993, appellant, Cassandra, and their children, including I.S., moved around the country because Cassandra was in the military. In June 1999, the family was living in Killeen, Texas. I.S., who was 20 years old at the time, was involved in an intimate relationship with appellant's brother, Robin. I.S. and Robin were living with appellant, Cassandra, and the children. Appellant and I.S. got into an argument that became physical, and appellant told I.S. and Robin to leave the house. Appellant and I.S. were involved in another altercation shortly after this in a nearby parking lot. As a result, appellant was charged with, and pled no contest to, assault.
>
> {¶ 4} I.S. stayed with Robin in Texas until fall 2004, when she was admitted into the hospital for an emotional breakdown. She had no further contact with her mother or appellant. After her release from the hospital approximately one week later, I.S. moved back to Ohio to live with her maternal grandmother, Marilyn Davis. In July 2005, I.S. contacted Cleveland police detective Georgia Hussein, alleging that appellant assaulted her sexually from January 1990 through November 1993.

*State v. Salahuddin*, 2009 WL 270498; ECF Dkt. #6-1 at 325-326.

---

[2]Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

In its May 2006 Term, the Cuyahoga County, Ohio Grand Jury indicted Petitioner for:

-ten counts of rape of a child under the age of 13 in violation of R.C. §2907.02(A)(1)(b) (Counts 1-10);

-twelve counts of gross sexual imposition of a child under the age of 13 ("GSI") in violation of R.C. §2907.05(A)(4)(Counts 11-22);

-twelve counts of kidnapping in violation of R.C. §2905.01(A)(2) and/or (A)(4) (Counts 23-34);

-twenty three counts of rape by force in violation of R.C. §2907.02(A)(2) (Counts 35-57);

-twenty three counts of gross sexual imposition by force in violation of R.C. §2907.05(A)(1)(Counts 58-80); and

-twenty three counts of kidnapping in violation of R.C. §2905.01(A)(2) and/or (A)(4) (Counts 81-103).

ECF Dkt. #6-1 at 80-182.  The rape, GSI, and kidnapping charges were divided into two time frames, the first set of charges (Counts 1-34) were alleged to have occurred from January 1, 1990 to November 16, 1991, and the second set of charges (Counts 35-103) were alleged to have occurred from November 17, 1991 to November 16, 1993.[3]

The first trial began on April 9, 2007, and, at the close of state's case, the state dismissed counts 8-10 (rape of a child under the age of 13), 20-22(GSI of a child under the age of thirteen), 23-34 (kidnapping), 47-57(rape), and 70-80 (GSI) and 81-103 (kidnapping). *Id.* at 183, 201.  A mistrial was declared on April 17, 2007, because the jury was unable to reach a verdict on any of the remaining forty counts. *Id.* at 184.

The second trial began on November 26, 2007. *Id.* at 203. The trial court renumbered the remaining counts in the indictment: Counts 1-7 (rape of a child under the age of thirteen) remained the same, counts 11-19 (GSI of a child under the age of thirteen) were renumbered 8-16, counts 35-46 (rape) were renumbered 17-28, and counts 58-69 (GSI) were renumbered 29-40.  At the close of the state's case on November 29, 2007, during the Rule 29 proceedings, the state dismissed counts

---

[3]The thirteenth birthday of the victim in this case was November 17, 1991.

15-16 (GSI of a child under the age of thirteen) 17-23 (rape), and 33-40 (GSI).  The trial court granted the Rule 29 motion as it related to three additional counts of rape, counts 24, 25 and 26.  On November 30, 2007, the jury returned guilty verdicts on counts 1-7 (rape of a child under the age of thirteen), 8-14 (GSI of a child under the age of thirteen), 27(rape), and 29-30 (GSI). The jury acquitted Petitioner of the rape charges in count 28 and the GSI charges in counts 31-32.  *Id.* at 186-187.

On December 10, 2007,  the trial court imposed a life sentence for each of counts 1-7, with the life sentences for counts 2-7 to be served concurrently, but consecutive to the life sentence for count 1;  five to ten year sentences for each of counts 8-14, to be served concurrently, and concurrent with the sentences imposed for counts 1-7; a five to twenty-five year sentence for count 27 to run consecutive to the sentences imposed on counts 1-7 and 8-14; and a one and a half year to five year sentence for each of counts 29 and 30, to be served concurrently, and concurrent with all of the preceding counts.  *Id.* at 188-189.

### B. <u>Direct Appeal</u>

On January 4, 2008, Petitioner, through new appellate counsel, filed a notice of appeal to the Ohio Court of Appeals for the Eighth District.  *Id.* at 190. Petitioner, raised the following assignments of error in his appellate brief:

ASSIGNMENT OF ERROR I:

THE INDICTMENT FAILED TO DISTINGUISH MULTIPLE ALLEGATIONS OF THE SAME TYPE OF WRONGFUL CONDUCT LACKING THE SPECIFICITY REQUIRED UNDER THE STATE AND FEDERAL CONSTITUTIONS AND THEREBY VIOLATED MARC SALAHUDDIN'S RIGHTS TO DUE PROCESS, NOTICE, A UNANIMOUS JURY VERDICT AND THE PROHIBITION AGAINST DOUBLE JEOPARDY.

ASSIGNMENT OF ERROR II:

THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING BEYOND A REASONABLE DOUBT THAT APPELLANT WAS GUILTY OF INDICTED COUNTS BECAUSE THE EVIDENCE DID NOT DISTINGUISH THE MULTIPLE ALLEGATIONS OF THE SAME TYPE OF WRONGFUL CONDUCT.

ASSIGNMENT OF ERROR III:

TRIAL COUNSEL'S ACTS AND OMISSIONS DEPRIVED MARC SALAHUDDIN OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE LEGAL ASSISTANCE.

ASSIGNMENT OF ERROR IV:

THE TRIAL COURT'S EVIDENTIARY RULINGS ALLOWING THE PROSECUTION TO INTRODUCE IRRELEVANT, INADMISSIBLE AND "EXTRAORDINARILY PREJUDICIAL" EVIDENCE VIOLATED MR. SALAHUDDIN'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

ASSIGNMENT OF ERROR V:

TRIAL COURT ERRONEOUSLY PRECLUDED THE DEFENSE FROM INTRODUCING IMPORTANT AND RELEVANT EVIDENCE THAT WOULD HAVE COUNTERED THE PROSECUTION'S CASE VIOLATING MR. SALAHUDDIN'S RIGHT TO PRESENT A DEFENSE AND CONFRONT WITNESSES UNDER THE SIXTH AMENDMENT.

ASSIGNMENT OF ERROR VI:
THE PROSECUTION'S CLOSING REMARKS ARGUING THEORIES BASED ON FACTS NOT IN EVIDENCE AND VOUCHING FOR THE CREDIBILITY OF THE COMPLAINING WITNESS CONSTITUTED MISCONDUCT WHICH VIOLATED MARC SALAHUDDIN'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION.

ASSIGNMENT OF ERROR VII:

OHIO'S REASONABLE DOUBT STANDARD INVITES THE JURY TO FIND ON LESS THAN PROOF BEYOND A REASONABLE DOUBT THEREBY VIOLATING HIS RIGHT TO LIBERTY WITHOUT DUE PROCESS OF LAW.

*Id.* at 209-210.

On February 9, 2009, the Eighth District Court of Appeals affirmed the trial court's judgment of conviction and sentence.  *Id.* at 325-333.

### C.  <u>Supreme Court of Ohio</u>

On March 25, 2009, Petitioner filed a timely appeal to the Supreme Court of Ohio. *Id.* at 334.

In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

PROPOSITION OF LAW I.

WHEN THE STATE CHARGES A DEFENDANT WITH AN INDICTMENT THAT FAILS TO DISTINGUISH BETWEEN MULTIPLE ALLEGATIONS OF THE SAME TYPE OF WRONGFUL CONDUCT, IT VIOLATES THE DEFENDANT'S RIGHTS TO DUE PROCESS, NOTICE, A UNANIMOUS JURY VERDICT AND THE PROHIBITION AGAINST DOUBLE JEOPARDY.

PROPOSITION OF LAW II.

WHEN A DEFENDANT IS CONVICTED IN A MULTI-COUNT INDICTMENT AND THE STATE'S WITNESSES CAN ONLY SPECULATE ON THE NUMBER OF CRIMINAL OFFENSES THAT ACTUALLY OCCURRED, THE DEFENDANT HAS BEEN DENIED HIS LIBERTY WITHOUT DUE PROCESS OF LAW, BECAUSE THE SPECULATIVE EVIDENCE IS NOT SUFFICIENT TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT.

PROPOSITION OF LAW III.

TRIAL COUNSEL'S ACTS AND OMISSIONS DEPRIVED MARC SALAHUDDIN OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE LEGAL ASSISTANCE.

PROPOSITION OF LAW IV.

WHEN A TRIAL COURT ADMITS IRRELEVANT, INADMISSIBLE AND "EXTRAORDINARILY PREJUDICIAL" EVIDENCE AND BARS THE DEFENSE FROM PRESENTING RELEVANT EVIDENCE THAT WOULD HAVE COUNTERED THE PROSECUTION'S CASE IT DENIES THE ACCUSED HIS RIGHTS TO DUE PROCESS, A FAIR TRIAL, AND THE RIGHT TO PRESENT A DEFENSE.

PROPOSITION OF LAW V.

A PROSECUTOR COMMITS MISCONDUCT AND DENIES THE DEFENDANT OF HIS RIGHT TO A FAIR TRIAL WHEN HE VOUCHES FOR A WITNESS'S CREDIBILITY AND ARGUES THEORIES BASED ON FACTS NOT IN EVIDENCE.

PROPOSITION OF LAW VI.

OHIO'S REASONABLE DOUBT STANDARD INVITES THE JURY TO FIND ON LESS THAN PROOF BEYOND A REASONABLE DOUBT THEREBY VIOLATING HIS RIGHT TO LIBERTY WITHOUT DUE PROCESS OF LAW.

*Id.* at 337.

On June 17, 2009, the Ohio Supreme Court denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question.  *Id.* at 384.

### III.  28 U.S.C. § 2254 PETITION

On June 10, 2010, Petitioner, through counsel, filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

Ground One:

The charging instrument used against Petitioner alleged multiple but indistinguishable counts of similar misconduct purportedly occurring over a period

-6-

of time well over a decade beforehand violates his rights to due process, notice, a fair trial, a unanimous verdict and the prohibition against double jeopardy.

Ground Two:

The evidence supporting Petitioner's multiple undifferentiated convictions for rape and gross sexual imposition was based exclusively on the speculative recollection of the complaining witness, and was, therefore not sufficient to prove his guilt of these offenses beyond a reasonable doubt.

Ground Three:

Petitioner's rights to present a defense, to a fair trial and to due process were violated where the trial court admitted irrelevant, inadmissible and unfairly prejudicial evidence against him at trial while simultaneously barring the defense from presenting relevant evidence that would have countered the prosecution's case.

Ground Four:

Trial counsel's numerous lapses violated Petitioner's right to effective legal assistance guaranteed under the Constitution's Sixth and Fourteenth Amendments.

Ground Five:

Petitioner's rights to due process and a fair trial were violated by prosecutorial misconduct where during summation the prosecutor vouched for the credibility of the complainant and repeatedly argued legal and scientific theories and facts not presented at trial or admitted into evidence.

ECF Dkt. #1.

## IV. **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. §2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

-8-

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).   In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

-9-

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

    (1)    whether the petitioner failed to comply with an applicable state procedural rule;

    (2)    whether the state courts actually enforced the state procedural sanction;

    (3)    whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

    (4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

**V**.      **STANDARD OF REVIEW**

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 10, 2010, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus. The AEDPA provides:

(d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

-11-

(1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.    Decisions of lower federal courts may not be considered.

B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.    The state court decision may be overturned only if:

1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

-12-

3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice."  *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).   The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied*, 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, 672,676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The United States Supreme Court recently observed:

-13-

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI.    ANALYSIS

### A.  Ground One

In Ground One, Petitioner asserts that the indictment alleged multiple but indistinguishable counts of similar misconduct purportedly occurring over a period of time well over a decade beforehand and violated his rights to due process, notice, a fair trial, a unanimous verdict and the prohibition against double jeopardy. Respondent contends that the assertions in Ground One have been procedurally defaulted based upon Petitioner's failure to raise them during the pretrial stage and, in the alternative, they are without merit. Because all of the kidnapping charges were dismissed by the state at the end of the state's evidence in the first trial, the undersigned will only address Petitioner's arguments as they relate to the rape and gross sexual imposition charges.

Counts One through Ten of the Indictment are identically worded and read, in their entirety:

> The jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO, Do find and present, that the above named Defendant(s), on or about the date of the offense set forth above [January 1, 1990 to November 16, 1991], in the County of Cuyahoga, unlawfully engaged in sexual conduct with Jane Doe, DOB: November 17, 1978, not his spouse, whose age at the time of said sexual conduct was under 13 years of age, whether or not the offender knew the age of Jane Doe, to-wit: November 17, 1978. Furthermore, The Grand Jurors further find and specify that the defendant purposely compelled the victim to submit by force or threat of force contrary to the form of the statute in such case made and provided [Rape R.C. 2907.02(A)(1)(b)], and against the peace and dignity of the State of Ohio.

Counts Eleven through Twenty-two of the Indictment are identically worded and read, in their entirety:

> The jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO, Do find and present, that the above named Defendant(s), on or about the date of the offense set forth above [January 1, 1990 to November 16, 1991], in the County of Cuyahoga, unlawfully had sexual contact with Jane Doe, DOB: November 17, 1978, not his spouse, whose age at the time of said conduct was

-14-

under 13 years of age, to-wit:  DOB:  November 17, 1978 contrary to the form of the statute in such case made and provided [Gross Sexual Imposition R.C. 2907.05(A)(4)], and against the peace and dignity of the State of Ohio.

Counts Thirty-five through Fifty-seven of the Indictment are identically worded and read, in their entirety:

The jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO, Do find and present, that the above named Defendant(s), on or about the date of the offense set forth above [November 17, 1991 to November 16, 1993], in the County of Cuyahoga, unlawfully engaged in sexual conduct with Jane Doe, DOB: November 17, 1978, by purposely compelling her to submit by force or threat of force contrary to the form of the statute in such case made and provided [Rape R.C. 2907.02(A)(2)], and against the peace and dignity of the State of Ohio.

Counts Fifty-eight through Eighty of the Indictment are identically worded and read, in their entirety:

The jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO, Do find and present, that the above named Defendant(s), on or about the date of the offense set forth above [November 17, 1991 to November 16, 1993], in the County of Cuyahoga, unlawfully engaged in sexual conduct[4] with Jane Doe, DOB: November 17, 1978, by purposely compelling her to submit by force or threat of force contrary to the form of the statute in such case made and provided [Gross Sexual Imposition R.C. 2907.05(A)(1)], and against the peace and dignity of the State of Ohio.

In *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the Supreme Court set forth the criteria by which the sufficiency of an indictment is to be measured:  First, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet," ' and, second, " 'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." ' *Id.* at 763-64, 82 S.Ct. 1038.  Thus, an indictment is only sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy.  Courts have found that the due process rights enunciated in *Russell* are applicable to state criminal charges.  See *De Vonish v. Keane*, 19 F.3d 107, 108 (2d Cir.1994); *Fawcett v. Bablitch*, 962

---

[4]The term "conduct" in the indictment replaces the term "contact" in the gross sexual imposition statute, which appears to be a typographical error.

F.2d 617, 618 (7th Cir.1992); see also *Isaac v. Grider*, 2000 WL 571959, at *4 (6th Cir.2000); *Parks v. Hargett*, 1999 WL 157431, at *3 (10th Cir.1999).

Petitioner argues that the indictment in this case, which contains identically-worded child rape, child GSI, rape, and gross sexual imposition charges, distinguished only by two separate time frames, was insufficient to place him on notice of the crimes charged and exposed him to double jeopardy based upon the identical wording of the charges. Petitioner predicates his constitutional claim on a similar indictment that the Sixth Circuit analyzed in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005). In that case, the defendant was convicted of twenty identically-worded counts of child rape and twenty identically-word counts of felonious sexual penetration, all forty of which were alleged to have been committed between March 1, 1995 and January 16, 1996.

At the 1996 jury trial, the only witness to testify as to the number of assaults committed by the defendant was his eight-year-old victim. She testified that Valentine forced her to perform fellatio in the family living room on "about twenty" occasions and that Valentine digitally penetrated her vagina in the family living room on "about fifteen" occasions. The child went on to testify generally as to further similar incidents occurring in her bedroom, in her siblings' bedroom, and in her mother and Valentine's bedroom. She additionally testified that Valentine achieved anal penetration with his penis on "about ten" occasions. The victim altered the number of occurrences slightly during cross-examination. The *Valentine* Court summarized the victim's testimony as follows: "The only evidence as to the number of offenses was provided by the testimony of the child victim, who described typical abuse scenarios and estimated the number of times the abusive offenses occurred, e.g., 'about 20,' 'about 15' or 'about 10' times." *Id.* at 628. Valentine was sentenced to forty consecutive life sentences.

The Sixth Circuit concluded that convictions on the "carbon copy" counts violated due process where "[t]he indictment, the bill of particulars, and even the evidence at trial failed to apprise the defendant of what occurrences formed the bases of the criminal charges he faced." *Id.* at 634 (emphasis added). The *Valentine* Court also found a double jeopardy violation because "there was insufficient specificity in the indictment or in the trial record to enable [the defendant] to plead

-16-

convictions or acquittals as a bar to future prosecutions." *Id.* (emphasis added). However, the *Valentine* Court specifically limited its holding, writing:

> Importantly, the constitutional error in this case is traceable not to the generic language of the individual counts of the indictment but to the fact that there was no differentiation among the counts. The exigencies of child abuse cases necessitate considerable latitude in the construction of criminal charges. The prosecutors in this case, however, abused this wide latitude by piling on multiple identical counts. Numerous charges cannot be made out through estimation or inference. Instead, if prosecutors seek multiple charges against a defendant, they must link those multiple charges to multiple identifiable offenses. Due process requires this minimal step. Courts cannot uphold multiple convictions when they are unable to discern the evidence that supports each individual conviction.

*Id.* at 636-637.

> The *Valentine* Court continued:

> . . .[T]he problem is that within each set of 20 counts, there are absolutely no distinctions made. Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented."

*Id.* at 632-633.

Although the district court in *Valentine* had granted the petition for writ of habeas corpus as to all forty convictions, the Court of Appeals reversed the district court's decision regarding the first conviction for child rape and the first conviction for felonious sexual penetration, affirmed the decision as to the remaining thirty-eight convictions, and remanded the case to the district court to grant the writ unless Ohio would vacate the inappropriate convictions and re-sentence the petitioner on only the two convictions that survived.

Respondent first contends that Petitioner procedurally defaulted his claim based upon the indictment when he failed to challenge the indictment at the trial court level. The state appellate court reviewed the constitutional challenges raised in Ground One for plain error only, based on Petitioner's failure raise an objection during the trial court proceedings.[5] A state court's plain error

---

[5]Footnote two of the Eighth District opinion reads, in its entirety:

Essentially, appellant maintains the indictment should be dismissed for insufficiency.

-17-

review does not revive a claim for habeas corpus review.  See e.g., *Scott v. Mitchell*, 209 F.3d 854, 868 (6th Cir.2000); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir.2000).  Similarly, any alternative ruling on the merits does not revive the claim for habeas corpus review.  *Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding"); *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir.2003) (where state court's dismissal of claim on merits constitutes an alternative holding, federal habeas court will consider the claim procedurally defaulted).  However, the precise claim being raised here depends not only on the way in which the indictment was worded, but, according to *Valentine*, the way in which the state went about proving its case.  Therefore,  the undersigned recommends that the Court find that this claim could not have been raised in a pre-trial challenge to the indictment.  Since that is the only procedural default identified and applied in the court of appeals' opinion the undersigned recommends that the Court should find that this claim is not barred by reason of procedural default, and that it can be reviewed on its merits.

Turning to the merits, although *Valentine* makes clear that carbon copy indictments are not ideal, they are not automatically violative of the constitutional rights of a defendant so long as the defendant, either through a bill of particulars or the trial record itself is apprised of the particulars against which he must defend.  In distinguishing this case from *Valentine*, the Eighth District correctly observed:

> {¶ 11} The instant case can be distinguished from *Valentine* because I.S. testified in great detail about the multiple incidents of appellant raping her. Cf. *State v. Hilton*, Cuyahoga App. No. 89220, 2008–Ohio–3010 (holding that "unlike the victims in

---

"The trial court is limited in its review of the indictment process insofar as it cannot inquire into the sufficiency of the evidence to support the indictment." *State v. Hodel* (Aug. 16, 1990), Cuyahoga App. No. 57069 (internal citations omitted). Appellant did not file a motion to dismiss the indictment, and in the absence of an objection, we employ a plain error analysis in reviewing this argument. See Crim.R. 52.

*State v. Salahuddin,* supra.

-18-

*Valentine* or *Hemphill*, [the victim in *Hilton*] was able to recall details of specific incidents of sexual abuse by appellant. She was able to differentiate these incidents by the location where each occurred, giving details of incidents in the living room on the couch where appellant slept, in the office in front of appellant's computer, and in her mother's bedroom after appellant had taken a bath. Each one of these incidences [is] a separate and distinct offense sufficient to support a multi-count indictment").

{¶ 12} In the instant case, I.S. testified in great detail about a number of separate incidents of abuse, including appellant squeezing her breast while she, [her mother], and appellant were sleeping on a pull-out sofa bed at the West 22nd Street address; appellant "humping" her and putting "his erect penis against [her] buttocks" while they were lying on the sofa bed during the daytime; another episode on the sofa bed where appellant put his fingers on and in her vagina, leaving her with small cuts that were painful when she urinated; an episode when appellant sucked on her breast so hard that she bruised around her areola; the first time that appellant raped her with his penis, when she lost her virginity at age 11 in the downstairs apartment at the West 22nd Street address; and the time that she was menstruating and he inserted his fingers in her vagina at the downstairs apartment of the West 22nd Street address.

{¶ 13} The state was very careful in asking I.S. about each instance of abuse and whether it was the same "episode" as other instances. For example, the following colloquy took place between the state and I.S.:

> "Q: You talked about instances where you would go to the bathroom and you had some cuts; fair to say?
>
> A: Yes.
>
> Q: Did that happen while you were in the upstairs apartment of West 22nd Street?
>
> A: Yes.
>
> Q: Did it happen more than once?
>
> A: Yes.
>
> Q: While you lived in that upstairs apartment?
>
> A: Yes.
>
> Q: Can you remember any comments or things that may have been said to you during these incidents in that upstairs apartment where he touched your vagina with his fingers and inserted them in your vaginal canal?
>
> A: Just, you know, did I like it. There wasn't a lot of talking, but just occasionally questions about whether or not I enjoyed what he was doing, you know, him emphasizing that I didn't need to tell anybody because I would be seen as a dirty girl; people wouldn't understand. And then everything was just kind of like [I.S. stopped talking].
>
> Q: Do you recall any of those events, either before, during, or after when the Defendant would-specifically when the Defendant would

-19-

put his fingers inside your vagina? Anything that you may have been wearing or any dates or holidays or anything of significance?

A: Are we talking about just in the upstairs apartment—

Q: Right now for the moment, yes.

A: It's just, a lot of the, in terms of what I remember as far as the certain incidents of the fondling of the vagina would be on that sofa couch. It was pulled out as a bed after we had watched these movies.

The other times where there was him sucking on my breast and fondling my vagina would be when my mom was not home. Like, when all those things happened together, my mom wasn't home. And I remember—I keep remembering, like, one time there was sunlight. So it was during the day. One of the incidents that I remember was during the day.

Q: Now, was that a different day than that morning you told us about?

A: Yes.

Q: So that's a different incident at the upstairs apartment?

A: Yes."

{¶ 14} I.S. continued to describe distinct episodes when appellant sexually abused her at the studio apartment on Lee Road and Scottsdale Boulevard and at the apartment on Warrensville Center Road.

{¶ 15} Accordingly, the instant case is distinguishable from *Valentine*, *supra*, as the evidence at trial was sufficient to show numerous incidents of sexual conduct and/or contact.

*State v. Salahuddin*, *supra*.

Petitioner contends that "[a]rguably, through [the victim's] testimony, the fact finder might have been able to distinguish at least some of the counts.  Nevertheless, the *Valentine* court stressed that even if a fact finder was able to distinguish between some of the occurrences by the victim's testimony, the fact that undifferentiated carbon copy indictments were used requires reversal on all but one conviction."  ECF Dkt. #13 at 475.  To the contrary, *Valentine* merely requires "minimal differentiation between the criminal counts," *Valentine*, 395 F.3d at 637, which occurred in this case based upon the victim's testimony.  Here, the state did not rely upon testimony that a specific act occurred an estimated number of times.  The state identified specific testimony to support each rape and gross sexual imposition charge.  See infra. at p. 27-29.  Therefore, the undersigned recommends

that the Court should reject Petitioner's constitutional challenge based upon due process with respect to notice of the charges against him.

Petitioner further argues that "[b]ecause of the copycat nature of this indictment and the fact that so many of the identical counts were dismissed during the first trial's Rule 29 proceedings, [Petitioner's] retrial ought to have been prohibited under the double jeopardy clause." ECF Dkt. #13 at 476. The *Valentine* Court recognized that the indictment in that case presented two double jeopardy problems: First, there was insufficient specificity in the indictment or in the trial record to enable Valentine to plead convictions or acquittals as a bar to future prosecutions. Second, the undifferentiated counts introduced the very real possibility that Valentine would be subject to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense. *Id.* at 634-635.

In *Isaac v. Grider*, 211 F.3d 1269, 2000 WL 571959 (6th Cir. May 4, 2000), the petitioner was tried on seventeen counts of sodomy and sexual abuse in connection with three child victims. *Id.* at *2. Ten of those counts dealt with the abuse of one boy. *Id.* There were five identical counts of second degree sodomy and five identical counts of second degree sexual abuse. *Id.* The trial court directed verdicts on four of the ten counts, presented the remaining six counts to the jury, and the petitioner was convicted on all six counts. On appeal, the Sixth Circuit issued the writ, finding that the petitioner could have been convicted of sexual abuse charges for which he had already been acquitted by a directed verdict: "the identical charges introduced the risk of double jeopardy and, indeed may have already resulted in double jeopardy in this prosecution ...." *Id.* at *5 (emphasis in original). The *Isaac* Court predicated its ruling on the fact that neither the indictment nor the jury instructions informed the jury which factual incidents were connected to which charges, and, although the jury had heard evidence of ten separate incidents, it was called to decide only six charges. Thus, the *Issac* Court reasoned that it was possible that the jury either convicted the defendant of counts for which he had been acquitted or convicted him without jury unanimity as to the underlying factual offenses.

Here, in both trials, the state dismissed charges for which no evidence was offered. In other words, unlike *Isaac*, where the trial court dismissed charges which were supported by evidence

admitted during the trial, here there was no possibility of a double jeopardy violation because the only charges that were dismissed were those charges for which no evidence was adduced at trial. During the Rule 29 proceedings at the first trial, the state dismissed sixty-three of the 103 original charges, including all thirty-five counts of kidnapping, based upon the victim's testimony. The state reiterated the victim's testimony to demonstrate that evidence existed with respect to the remaining forty charges to survive the Rule 29 challenge, and the Rule 29 motion was ultimately denied with respect to those seven child rape charges, nine child GSI charges, twelve rape charges, and twelve GSI charges. A mistrial was declared on all forty counts.

At the second trial, the forty mistried counts (renumbered) were re-tried, and, at the close of the state's case, the state dismissed  two child GSI charges, seven rape charges, and eight GSI charges. The trial court granted the Rule 29 motion on three of the remaining rape charges, leaving twenty counts (seven counts of child rape, seven counts of  child GSI, two counts of rape, and four counts of GSI) for the jury's consideration.  Again, the state reiterated the victim's testimony to demonstrate that there was sufficient evidence to survive the Rule 29 challenge.

The Eighth District undertook the following analysis of Petitioner's double jeopardy claim:

{¶ 16} Appellant next argues that the state violated the prohibition against double jeopardy in the instant case, because his retrial should have been barred after various "carbon copy" charges in the indictment were dismissed under Crim.R. 29 during the first trial.  As support for this argument, appellant relies on *State v. Ogle*, Cuyahoga App. No. 87695, 2007–Ohio–5066. Appellant's final argument under this assignment of error is that because of the vague indictment, it was impossible for the jury to reach a unanimous verdict on any of the individual counts against him. As support for this argument, appellant relies on *State v. Johnson* (1989), 46 Ohio St.3d 96, 545 N.E.2d 636.

{¶ 17} The instant case is distinguishable from *Ogle*. In *Ogle*, the defendant was charged with various sexual offenses. At trial, he was found guilty of three counts, not guilty of 13 counts, and the jury deadlocked on one count of rape. Appellant filed a motion to dismiss the mistried rape count, "on due process and double jeopardy grounds, because it was indistinguishable from the other two rape counts for which he had already been acquitted." *Id.* at ¶ 6. The court agreed with appellant, finding that the indictment was insufficient because there was no differentiation among the counts. *Id.* at ¶ 23. In the instant case, however, we held, supra, that the indictment was not defective because trial testimony clearly differentiated the multiple counts of rape and gross sexual imposition that occurred.

{¶ 18} Finally, the court in the instant case complied with the mandates of *Johnson*, supra, as the jury instructions included a general instruction on unanimity. See *Johnson* at 104, 545 N.E.2d 636 (concluding that "the prevailing rule is, 'a general unanimity instruction will ensure that the jury is unanimous on the factual basis for

a conviction, even where an indictment alleges numerous factual bases for criminal liability' ") (internal citations omitted).

{¶ 19} For the same reasons outlined under the *Valentine* line of cases, we find the instant case distinguishable from *Ogle*, supra. Additionally, appellant's argument regarding the unanimous jury verdict likewise fails. Appellant's first assignment of error is overruled.

*State v. Salahuddin,* supra.

*Ogle* was factually similar to *Isaac,* supra.  In *Ogle*, the indictment charged three identical rape counts against the same victim.  The *Ogle* Court summarized the victim's testimony in that case as follows:

A.P. testified that when she slept over her grandparents' house, and she and appellant would be in the basement watching television, appellant would touch her private areas. She testified that appellant rubbed her breast underneath her clothes and rubbed his hand on her genital area "a couple times." Initially, A.P. testified that appellant did not touch any other parts of his body to her body, but then testified differently when questioned about the new allegations she made in July 2005. [ ] In particular, in July 2005, A.P. alleged for the first time that appellant digitally penetrated her "a couple times" (rape), and put his mouth on her genital area one time (rape). A.P. also claimed that appellant touched her more than ten times. She testified that this abuse started when she was six years old. No further testimony differentiating the counts was elicited. The only amendment the State made to the indictment was during trial to change the date of the offenses to August 28, 2003 through August 14, 2004.

*Ogle* at *2.  The jury in *Ogle* found the defendant guilty of two counts of rape, and not guilty of the third count of rape.  However, in that case there was evidence offered at trial to support at least three counts of rape.  The Eighth District concluded that because "[n]o part of the indictment, no amendment to the indictment, no bill of particulars, no jury instruction and no verdict forms exist to differentiate these counts one from the other such that a court in a second trial would be able to discern whether there had been a previous finding of not guilty as to the alleged act." *Id.* at *5. Accordingly, the *Ogle* Court concluded that "at this juncture of the proceedings, impossible to tell whether the rape counts that resulted in acquittal referred to the allegation of digital penetration, or the allegation of oral copulation. Retrial upon the mistried rape count, therefore, would constitute double jeopardy." *Id.*  Simply put, the same double jeopardy concerns are not raised in this case because the claims dismissed by the state in the first case were dismissed for lack of any evidence supporting those claims offered at trial.  Again, unlike the charges in *Isaac* and *Ogle,* the trial court in the first trial did not dismiss any charge for which evidence was offered at trial, and, as a

-23-

consequence, the trial court had no duty to inform the jury to disregard any evidence offered at trial due to the dismissal of the charges.  Therefore, unlike the defendants in *Isaac* and *Ogle*, Petitioner faced no possibility of double jeopardy in the second trial.  Accordingly, the undersigned recommends that the Court reject Petitioner's due process claim as it relates to double jeopardy.

Next, Petitioner challenges the unanimity of the jury's verdict in his case.  Petitioner writes, "Between the first trial and the completion of the second trial, fully 83 of the original 103-counts [sic] had been dismissed.  The state did nothing to clarify the evidentiary basis for the allegations that remained."  ECF Dkt. #13 at 479.  Petitioner further argues, "The lack of specificity troubled the jury during deliberations. In a note sent to the trial court on November 30, 2007, the foreman wrote the following: 'The jury is wondering if we can get a listing of when each charge happened at each residence."  The Court responded that a listing was not available."  *Id.*

Petitioner's unanimity argument is based upon the trial court's failure to identify the allegations supporting each count in the jury charge.  He cites no case law that suggests such enumeration in the jury charge is constitutionally required.  Moreover, the defect in the carbon copy indictment in *Valentine* was predicated upon the lack of specificity of evidence underpinning the charges in that case, not any defect in the jury charge.

Finally, Petitioner claims that the length of time covered by the indictment violated his constitutional rights.  However, large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements.  See *Isaac,* supra. at *5 (four months); *Madden v. Tate*, 830 F.2d 194, 1987 WL 44909, at *1–3 (6th Cir.1987) (six months); see also *Fawcett v. Bablitch*, 962 F.2d 617, 618–19 (7th Cir.1992) (six months); *Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir.1990) (three years); *Parks v. Hargett*, 1999 U.S.App. LEXIS 5133, 1999 WL 157431, at *4 (10th Cir.1999) (seventeen months).  As a consequence, the undersigned recommends  that the Court reject Petitioner's due process claim to the extent that it is based upon jury unanimity  and the length of time covered by the indictment.

Based upon the evidence adduced at trial, the undersigned recommends that Ground One has no merit.

### B.  Ground Two

In Ground Two, Petitioner contends that the evidence supporting his convictions for rape and gross sexual imposition were based exclusively on the speculative recollection of the complaining witness, and were not sufficient to prove his guilt of these offenses beyond a reasonable doubt.  The allegation that a verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, *reh'g denied*, 444 U.S. 890 (1979), and *In re Winship*, 397 U.S. 358 (1970).

To determine whether the state court unreasonably applied the sufficiency-of-the-evidence standard of *Jackson v. Virginia*, * * * "[f]irst, [the Court] must ask whether the evidence itself was sufficient to convict.... [and] [t]he inquiry ends if [the Court] determines that there was sufficient evidence." *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir.2010) (citation omitted).  Second, "[i]f [the Court] find[s] that the evidence is insufficient to convict, [the Court] must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt." *Id.* (citation omitted).

The result of this double deference is that "habeas corpus relief is appropriate based on insufficient evidence only where we find, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007).  On habeas review, federal courts must assume that the jury "resolve[d] conflicts in the testimony," "weigh[ed] the evidence," and drew "reasonable inferences" therefrom. *Jackson*, supra, at 319.  A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.

The Eighth District provided the following analysis of Petitioner's sufficiency of the evidence challenge:

> {¶ 20} In appellant's second assignment of error, he argues that "the evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that

-25-

appellant was guilty of indicted counts because the evidence did not distinguish the multiple allegations of the same type of wrongful conduct."

{¶ 21} When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 22} In the instant case, appellant was convicted of the following two types of rape, in violation of R.C. 2907.02:

{¶ 23} "(A)(1) No person shall engage in sexual conduct with another * * * when * * * (b) [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person"; and "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 24} In addition, appellant was convicted of two types of gross sexual imposition, which R.C. 2907.05 defines as follows:

{¶ 25} "(A) No person shall have sexual contact with another, * * * [or] cause another to have sexual contact with the offender * * * when * * *(1) [t]he offender purposely compels the other person * * * to submit by force or threat of force"; [and] "(4) [t]he other person * * * is less than thirteen years of age, whether or not the offender knows that age of that person."

{¶ 26} Appellant's sole argument regarding insufficient evidence centers around indistinguishable allegations of multiple offenses. We thoroughly analyzed this argument, albeit in a different form, in appellant's first assignment of error. For the same reasons, we reject it here. Appellant's second assignment of error is overruled.

*State v. Salahuddin,* supra.

In his traverse, Petitioner contends that "the activity alleged did not distinguish between the activity or dates, nor did it provide clarification as to how it arrived at that number of charges. Neither in the indictment, nor during testimony was there clarification of the 40 separate and distinct, but duplicative, counts of rape and GSI and the 20 counts the jury ultimately considered." ECF Dkt. #13 at 484.  In order to illustrate the confusion created by the carbon copy indictment, Petitioner relies upon the state's closing argument, where the prosecutor specifically identified the first breast fondling incident and the humping incident as two counts of gross sexual imposition. Petitioner argues that "[t]hose incidents were not a part of the charged misconduct in this case, because [the victim], who provided the only evidence on the subject , testified that they occurred in 1989 (outside of the indictment.)" *Id.*

-26-

The quote is taken from the victim's testimony during cross examination. The victim testified that the humping incident had occurred approximately two weeks after the breast squeezing incident. ECF Dkt. #15-3 at 2226. Petitioner's trial counsel asked the victim to identify the day of the week or the month that the second incident occurred. *Id.* at 2226-2227. The victim testified that it was nice weather, so it must have taken place in the late spring or early summer. *Id.* at 2227. Petitioner's trial counsel asked, "You just can't remember. You remember what year it was? What year was it?" The victim responded, "I was 11, so [19]89."

Throughout the victim's trial testimony she relied upon the her elementary and middle school grade levels to identify the time frame when the specific incidents of molestation took place. The victim, in describing the breast squeezing incident during her direct examination, testified that it occurred when she was in the middle of fifth grade. The incident took place at the W. 22nd Street apartment, where the victim testified that she had moved with her mother at the end of her fourth grade year or the beginning of her fifth grade year. ECF Dkt. #15-4 at 2047. Her testimony that the first and second incidents took place in 1989 is inconsistent with the lion's share of her testimony, which established that the first two incidents took place in the late spring or early summer of 1990. Petitioner, in his traverse, relies exclusively upon this obvious miscalculation of the year by the victim during cross examination to demonstrate that the carbon copy indictment somehow tainted the victim's testimony in its entirety. The undersigned recommends that the Court reject this rigid interpretation of the victim's testimony, which, if believed, would support each and every conviction in this case.

During the argument on the Rule 29 motion, the state identified the following testimony as establishing evidence sufficient to survive a Rule 29 motion, ECF Dkt. #15-5, 2446-2454:

Child rape:

- the first digital penetration in the upstairs apartment on W. 22nd Street, ECF Dkt. #15-3 at 2079 (Count 1);

-the digital penetration in the downstairs[6] apartment on W. 22nd Street after the victim and Petitioner attended his divorce proceedings, ECF Dkt. #15-4 at 2115 (Count 2);

---

[6]The prosecutor mistakenly states that this incident occurred in the upstairs apartment.

-the digital penetration that occurred during daylight hours in the upstairs apartment on W. 22nd Street, ECF Dkt. #15-3 at 2083 (Count 3);

-the digital penetration that occurred in the downstairs apartment when the victim was in bed with Petitioner and her mother, ECF Dkt. #15-4 at 2255 (Count 4);

-the penile penetration in the weight room in the downstairs apartment on W. 22nd Street, ECF Dt. #15-3 at 2091-2093 (Count 5);

-the digital penetration that same day in the weight room in the downstairs apartment on W. 22nd Street, *Id.* (Count 6);

-the penile penetration in the small office at Lee and Scottsdale prior to Malik's birth, ECF Dkt. #15-4 at 2152, 2263 (Count 7);

Gross sexual imposition of a child:

-the breast squeezing incident, ECF Dkt. #15-3 at 2072 (Count 8);

-the humping incident, *Id.* at 2074 (Count 9);

-the breast touching during the digital and penile rape in the weight room, *Id.* at 2091-2093 (Count 10);

-the breast touching during the digital penetration following the divorce proceedings, ECF Dkt. #15-4 at 2115  (Count 11);

-the breast touching while Petitioner and the victim were naked in bed and the victim's mother walked in on them, *Id.* at 2140 (Count 12);

-when Petitioner instructed the victim to suck his breasts, *Id.* at 2152 (Count 13);

-when Petitioner instructed the victim to stroke his penis, *Id.* (Count 14);

Rape:

-Petitioner put his penis in the victim's mouth in Warrensville, *Id.* at 2171-2172 (Count 27);

-the penile penetration in the small office, ECF Dkt. #2160[7] (Count 28);

-the digital penetration in the small office, ECF Dkt. #2160[8];

-the digital penetration in Warrensville;

-the penile penetration in Warrensville that same day;

---

[7]The only testimony relating to an incident in a small office occurred at the Lee and Scottsdale address, prior to Malik's birth.  However, during the victim's direct testimony, she stated that she "[thought] she was about 13" when Petitioner raped her in the small office. ECF Dkt. #2160. The jury acquitted Petitioner on Count 28, consistent with the guilty verdict on Count 7.

[8]See footnote 7.

-28-

GSI:

-the victim touching Petitioner's penis in the office space (Count 29);

-Petitioner touching the victim's breast in the office space (Count 30);

-Petitioner touching the victim's breast during the two Warrensville incidents (Counts 31 and 32).

Despite the prosecutor's argument with respect to evidence supporting five rape charges, the trial court dismissed three additional rape charges (leaving only counts 27 and 28), because the victim testified that the only incident that she specifically recalled at the Warrensville apartment was the oral sex incident.  *Id.* at 2172-2173.  Likewise, although the jury found Petitioner guilty of the gross sexual imposition charges in counts 29 and 30, the jury entered not guilty verdicts on Counts 31 and 32, which, according to the state's recitation of the victim's testimony, related to the Warrensville incidents.  The guilty verdicts on counts 29 and 30 relate to the victim's testimony that every incident of rape was accompanied by the fondling of her breasts by Petitioner and her fondling his penis.  After the Rule 26 proceeding, the trial court explained to the jury, "the Court has cut the number of counts down so the number of counts for your ultimate disposition are 20 counts.  I'll go through them more fully in the jury charge."  ECF Dkt. #15-5 at 2455.

Accordingly, the undersigned recommends that the Court find that there was sufficient evidence to support each and every conviction in this case, and conclude that Ground Two has no merit.

**C.  Ground Three**

In Ground Three, Petitioner contends that his rights to present a defense, to a fair trial and to due process were violated where the trial court admitted irrelevant, inadmissible and unfairly prejudicial evidence against him at trial while simultaneously barring the defense from presenting relevant evidence that would have countered the prosecution's case.[9]  Specifically, Petitioner argues that the trial court erred in admitting the victim's testimony that Petitioner molested her both prior

---

[9]Petitioner appears to have abandoned his claim based upon the trial court's refusal to admit evidence, that is, his fifth assignment of error at the state appellate level, as he provides no argument in his traverse relating to that claim.

-29-

to and after the time period identified in the indictment.  Petitioner further contends that the trial court erred in admitting the testimony of two witnesses, Marilyn Davis and Tonya Lilly, who testified that the victim told them that she was being abused by Petitioner, because the state relied upon the testimony of Davis and Lilly to bolster the victim's testimony.

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution. *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir.1994).  As a general rule, an error in the admissibility of evidence does not constitute such a denial, as such errors are matters of state law not cognizable in habeas corpus. *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir.2000), cert. denied, 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682 (2001).  Under the AEDPA the states have wide latitude in ruling on evidentiary matters. *Seymour v. Walker*, 224 F.3d 542 (6th Cir.2000), cert. denied, 532 U.S. 989, 121 S.Ct. 1643, 149 L.Ed.2d 502 (2001).  In considering petitioner's habeas corpus petition, a federal court may not grant such petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United State Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846 (6th Cir.2000).

The Eighth District provided the following analysis of Petitioner's due process challenges based upon the evidentiary rulings by the trial court:

{¶ 44} In appellant's fourth assignment of error, he argues that "the trial court's evidentiary rulings allowing the prosecution to introduce irrelevant, inadmissible and extraordinarily prejudicial evidence violated Mr. Salahuddin's rights to due process and a fair trial."

{¶ 45} The standard of review for admissibility of evidence is abuse of discretion. See *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 587 N.E.2d 290.

{¶ 46} Appellant first argues that evidence of other acts is inadmissible under Evid.R. 404(B) "to prove the character of a person in order to show action in conformity therewith."  This is the same argument appellant made in his third assignment of error, under an ineffective assistance of counsel theory.  Again, appellant cites no specific examples of the "other acts" that he claims were admitted into evidence.  We reject this argument for reasons already stated in our analysis of *State v. Lowe*, supra. See, also, R.C. 2945.59 (stating that "[i]n any criminal case in which the defendant's motive or intent, * * * scheme, plan, or system of doing an act is material, any acts of the defendant which tend to show [this] * * * may be proved, whether they are

-30-

contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant"); *State v. Donnal*, Allen App. No. 1–06–31, 2007–Ohio–1632 (allowing evidence of the defendant's prior sexual acts with the victim to be admitted under R.C. 2945.59 for the purpose of showing a plan or system).

{¶ 47} Appellant's next argument under this assignment of error is as follows: "Through both Marilyn Davis and Tonya Lilly, the prosecutor introduced evidence that [I.S.] had told them about the abuse * * *." Appellant claims that this evidence amounted to hearsay; however, appellant fails to cite to the record or quote directly the statements in question. As there is nothing for us to review, we disregard this argument. See App.R. 12(A)(2) and 16(A)(7) (noting that "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based* * * ").

*State v. Salahuddin,* supra.

Petitioner has not offered any ruling from the United States Supreme Court to which the state court's evidentiary rulings were contrary on a similar question of law or any Supreme Court precedent where the Court reached a contrary conclusion in a case with materially indistinguishable facts.[10]  The admission of the victim's testimony that the abuse that she suffered continued long after the time period identified in the indictment does not constitute a constitutional violation.  Likewise, having reviewed the testimony of Davis and Lilly, the admission of their testimony does not give rise to a constitutional violation.  Accordingly, based upon the limited review of evidentiary matters under AEDPA, the undersigned recommends that the Court find that Ground Three has no merit.

### D.  Ground Four

In Ground Four, Petitioner contends that his trial counsel's numerous lapses violated Petitioner's right to effective legal assistance guaranteed under the Constitution's Sixth and Fourteenth Amendments.  In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial.  *Strickland v. Washington*, 466 U.S. 668 (1984).  To warrant reversal of a

---

[10]Petitioner cites *U.S. v. Sheppard,* 384 U.S. 333 (1966), in which the United States Supreme Court granted a habeas petition based upon the failure of trial court in murder prosecution to protect the defendant from inherently prejudicial publicity which saturated the community and to control disruptive influences in courtroom, which the *Sheppard* Court concluded had deprived the defendant of fair trial consistent with due process.

conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Court scrutiny of defense counsel review must be "highly deferential." *Id*. at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

The Eighth District provided the following analysis with respect to Petitioner's ineffective assistance of counsel claims:

> {¶ 27} In appellant's third assignment of error, he argues that "trial counsel's acts and omissions deprived Marc Salahuddin of his Sixth Amendment right to effective legal assistance." Specifically, appellant argues that his counsel was ineffective in the following seven ways: 1) failure to object to retrial on double jeopardy grounds; 2) failure to use I.S.'s testimony from the first trial for cross-examination during the second trial; 3) failure to object to "numerous instances of uncharged misconduct"; 4) failure to object to I.S.'s testimony that she had a nervous breakdown; 5) failure to object to a police officer's implications about corroborative evidence; 6) failure to object to the prosecutor's closing remarks; and 7) failure to object to Tonya Lilly's testimony at the second trial.

> {¶ 28} To substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Brooks (1986), 25 Ohio St.3d 144, 495 N.E.2d 407. In *State v. Bradley*, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove the second prong of prejudicial effect. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "The object of

-32-

an ineffectiveness claim is not to grade counsel's performance." *Id.* at 142, 538 N.E.2d 373.

{¶ 29} We also note that, in general, counsel's failure to object may be seen as a trial strategy and does not necessarily amount to ineffective assistance of counsel. See *State v. McWhorter*, Cuyahoga App. No. 87443, 2006–Ohio–5438 (holding that "[s]trategic and tactical decisions will not form the basis of a claim of ineffective assistance of counsel, even if there had been a better strategy available to him. Errors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel").

{¶ 30} Appellant's first allegation of ineffective assistance of counsel is rejected for the reasons outlined in our analysis of his first assignment of error.

{¶ 31} In appellant's second allegation of ineffective assistance of counsel, he points to four incidents of what he refers to as "inconsistent" testimony by I.S. between the first trial and the second trial. Appellant argues that it was error for counsel to fail to point these inconsistencies out to the jury in the second trial. However, a careful reading of both of I.S.'s trial testimonies reveals slight differences that do not amount to inconsistencies. For example, appellant argues that I.S. testified in the second trial that during one incident, appellant put his fingers in her vagina while she had her period; however, when she testified about that same incident in the first trial, she failed to mention she was menstruating. In reading the first trial transcript, I.S. describes the detail of the incident and states that appellant moved her sanitary pad to insert his fingers in her vagina. So, although I.S. does not specifically state that she had her period, she references a sanitary napkin. We find this alleged "inconsistency" to be irrelevant, not to mention trivial.

{¶ 32} Another example of appellant claiming counsel was ineffective for failing to point out an inconsistency is appellant's allegation that at the first trial, I.S. stated that multiple sexual incidents took place between her and appellant at the Warrensville Center Road address; however, appellant claims that I.S. testified at the second trial that only one sexual act occurred there. This is not true. The following excerpt is from I.S.'s testimony at the second trial:

> "Q: Is this the only sexual act that occurred at the Warrensville Center Road address?
>
> A: No. But it's the only—it's the only act that I clearly remember."

{¶ 33} Appellant's second allegation of ineffective assistance of counsel is without merit.

{¶ 34} In appellant's third allegation of ineffective assistance of counsel, he argues that "the State introduced more improper other acts evidence than counsel on appeal is able to quantify * * *." Appellant follows this up with only one specific example from the record: "testimony about an occurrence sometime after [I.S.] had gone off to prep school, while she and [appellant] were riding a Greyhound bus."

{¶ 35} Evid. R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In *State v. Lowe* (1994), 69 Ohio St.3d 527, 531, 634 N.E.2d

-33-

616, the Ohio Supreme Court held that there are two situations in which other acts evidence of identity is admissible at trial:

"First are those situations where other acts 'form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment,' and which are 'inextricably related to the alleged criminal act.' *State v. Curry* (1975), 43 Ohio St.2d 66, 73, 72 O.O.2d 37, 41, 330 N.E.2d 720, 725.

* * *

"Other acts may also prove identity by establishing a modus operandi applicable to the crime with which a defendant is charged. 'Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B).' *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, syllabus. ' "Other acts" may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense.' *State v. Smith* (1990), 49 Ohio St.3d 137, 141, 551 N.E.2d 190, 194.

* * *

"A certain modus operandi is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character. To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question."

{¶ 36} We find no error with counsel's failure to object to the single statement that I.S. made regarding alleged abuse on a Greyhound bus, as it showed appellant's modus operandi or pattern of sexual abuse as it related to the victim.

{¶ 37} In appellant's fourth allegation of ineffective assistance of counsel, he argues that counsel failed to object to I.S.'s unsupported testimony that she had a nervous breakdown. Specifically, appellant argues that I.S.'s testimony "involved a medical diagnosis or opinion" that she was not capable of giving, and that it "was irrelevant to the issues in the case * * *."

{¶ 38} Appellant cites no case law to show why this testimony should have been excluded. A reading of the transcript shows that I.S. did not give medical opinion testimony; rather, she answered the question of why she moved from Texas back to Cleveland. Furthermore, there is no showing that the outcome of the trial would have been different had defense counsel objected to this answer. Appellant's fourth allegation of ineffective assistance of counsel is without merit.

{¶ 39} In appellant's fifth allegation of ineffective assistance of counsel, he argues that counsel failed to object to Cleveland police detective Hussein's testimony that, as part of her investigation into I.S.'s complaint, she interviewed other people who knew I.S. about I.S.'s behavior at the time. Appellant opines this was ineffective because it violated the hearsay rule. Appellant's argument is unsupported by the record.  A review of Detective Hussein's testimony shows no hearsay statements were made. Rather, the detective talked about the procedure for conducting an investigation when there were no witnesses to the abuse other than the victim. Accordingly, we reject appellant's fifth allegation of ineffective assistance of counsel.

-34-

{¶ 40} In appellant's sixth allegation of ineffective assistance of counsel, he argues that counsel was ineffective by failing to object to the state's closing argument. As will be discussed in appellant's sixth assignment of error, infra, this line of argument is rejected.

{¶ 41} In appellant's seventh and final allegation of ineffective assistance of counsel, he argues that counsel was ineffective for failing to object to Tonya Lilly's testimony at the second trial because she was present at the first trial. As support for this argument, appellant cites to Evid.R. 615, which states that "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses * * *." Nothing in this rule appears to apply to the unique situation at hand, as this rule acts to exclude a witness from hearing other testimony, not to preclude them from testifying at all.

{¶ 42} Additionally, appellant fails to show how this alleged ineffective assistance of counsel prejudiced him. Appellant does not cite to or detail Lilly's testimony at the second trial, or show how, without this testimony, the result of the trial would have been different.

{¶ 43} In summary, all seven incidents of alleged ineffective assistance of counsel fail the Strickland test, and appellant's third assignment of error is overruled.

*State v. Salahuddin,* supra.

To the extent that Petitioner has failed to show that any of issues he raised on direct appeal constituted error, he has likewise failed to show that trial counsel's failure to object to those matters constitutes ineffective assistance of counsel.  As a consequence, Petitioner has failed to articulate a constitutional violation in Ground Four.  Accordingly, the undersigned recommends that the Court find that Ground Four has no merit.

### **E.  Ground Five**

In Ground Five, Petitioner argues that his rights to due process and a fair trial were violated by prosecutorial misconduct where during summation the prosecutor vouched for the credibility of the complainant and repeatedly argued legal and scientific theories and facts not presented at trial or admitted into evidence.  Petitioner contends that the state's closing argument was "intended to enrage the jury while placing the State's imprimatur on the complaining witness's credibility." ECF Dkt. #13 at PageID # 500.  Petitioner further contends that the state introduced facts and expert opinion testimony about child psychology and memory in its closing argument that was not introduced into evidence at the trial.  *Id.*

"In the evaluation of a claim for prosecutorial misconduct, it is not enough that the prosecutor's comments were improper, but the relevant question is whether the prosecutors'

comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Smith v. Mitchell*, 567 F.3d 246, 255 (6th Cir.2009) (internal quotation marks and editorial marks omitted). Courts apply a "two-part test to determine whether the state court reasonably applied the federal standard in holding that prosecutorial misconduct did not render [the] trial fundamentally unfair." *Irick v. Bell*, 565 F.3d 315, 324 (6th Cir.2009). The Court must first determine whether the prosecution's conduct was improper. *Id.* Second, the Court must determine whether that improper conduct was flagrant by considering four factors: (1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally. *Id.*

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [government] behind that witness." *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir.2008) (quoting *United States v. Francis*, 170 F.3d 546, 550 (6th Cir.1999)). "Generally, improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Francis*, 170 F.3d at 550 (internal citations omitted). "It is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying." *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir.2005)(citing *United States v. Young*, 470 U.S. 1, 17–19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

The Eighth District provided the following analysis of Petitioner's prosecutorial misconduct claims:

{¶ 51} In appellant's sixth assignment of error, he argues that "the prosecution's closing remarks arguing theories based on facts not in evidence and vouching for the credibility of the complaining witness constituted misconduct which violated Marc Salahuddin's rights under the Fifth, Sixth and Fourteenth Amendments of the Constitution."

{¶ 52} The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper, and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. We review whether counsel's arguments to the jury amount to misconduct for an abuse of discretion. *Golamb v. Layton* (1950), 154 Ohio St. 305, 95 N.E.2d 681.

> "In reviewing prosecutorial misconduct claims, we must keep in mind that 'both the prosecution and defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.' *State v. Stephens* (1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773. 'Prosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence.' *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293."

*State v. Wilson*, Cuyahoga App. No. 86092, 2006–Ohio–1333, at ¶ 29.

{¶ 53} Appellant first argues that the prosecutor improperly vouched for I.S.'s credibility. In the instant case, the prosecutor's closing argument included the following:

> "One witness, if believed by you, is sufficient to convict this Defendant. And I would submit to you that you had that witness in the form of [I.S.] who you had the benefit of seeing for over a day. Extensive cross-examination. Extensive testimony. Candid testimony.

> "She's the witness who's convinced you beyond a reasonable doubt. Because I know when you listened to her, you knew it in your gut, you knew it as you listened to her details and her description about that penis in her mouth. You felt it inside of you, and you felt it because you were convinced.

> "You felt disgust. You felt the rage and you felt her helplessness. If you felt it it's because you believed it."

{¶ 54} In *State v. Wilson*, supra, at ¶ 32, we held that while it may have been misconduct when a prosecutor expressed personal opinions as to witnesses or defendants, "the prosecutor's personal opinion justifies reversal only when it 'is expressed in such a manner as to permit the jury to infer that the opinion is based on the prosecutor's knowledge of facts outside the record.' " (Internal citations omitted.)

{¶ 55} We also note that counsel failed to object to the prosecutor's closing remarks in the instant case, thus, appellant has waived all but plain error regarding these comments. *State v. Slagle* (1992), 65 Ohio St.3d 597, 605 N.E.2d 916. "Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Long*, supra, 53 Ohio St.2d 91, 7 Ohio Op.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. 'Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.' *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899." *State v. Phillips* (1995), 75 Ohio St.3d 72, 83.

{¶ 56} In the instant case, the prosecutor bolstered her own witness by suggesting that the candid detail of I.S.'s testimony showed that she was being truthful. See *State v. Davenport* (Jan. 8, 1999), Montgomery App. No. 17098 (holding that "prosecutors can comment on the credibility of witnesses based on their in-court testimony").

{¶ 57} Appellant next argues under this assignment of error that "the prosecutor introduced facts and expert opinion testimony about child psychology and memory that was not introduced into evidence at trial." Appellant points to parts of the record in which the prosecutor argued to the jury that just because I.S. did not remember every incident of sexual abuse in chronological order, that does not mean the abuse did not happen.[11]  Appellant argues that a child psychologist or memory expert was

_____

[11]In its closing argument, the state observed:

But here's a general thing about children.  If you ask them: Tell me about an event, pick any event, any event that should stand out in their mind . . .Let's say that maybe somebody takes your child off to Cedar Point.  All right.  And you child comes home and you say, well, tell me about Cedar Point, how was the trip?  What child says: Well, we entered the gates at eight o'clock in the morning.  From there, the first thing we went to the roller coaster.  And then we went to the carousel. I was wearing my red shirt, but it got cold so I put on my sweater.  Then I was talking with my friend, June, and we got on a different roller coaster. Then had lunch, and I had a hamburger and French fries.

That's not what kids do.  They don't recall things like that, they don't recall things from A to Z in chronological order.

When you think about even your own self going back to childhood, there are things that are burned or impressions that are burned in your mind. Some things you think: Why do I remember that? That's not of particular significance, but yet, you recall it very strongly. Other things you remember, certain facts, very clearly and others you don't.

Were these important memories in your life? Some of them. . . .Just in the normal course of life, how do people recall events and how do children relate those events and don't you have to say to children: Hey, did you go on that? Did you go on that roller coaster? Oh year, Mom, oh yeah, Dad, I went on that too. I went on that in the afternoon. It's not because you coached them. You ask a question; it triggers their memory and then they start telling you information. That's how it works.

Why is that relevant to this case? Because we have an adult woman who is now telling you about events or sequences of events as a child. Does she remember the date that this happened. No. Why should she?

...Can she tell you every single time she was molested? Absolutely not. Because it became so darn routine. It almost became automated.

Remember I.S.'s testimony, that at some point, she just started to dissociate. She would lay there an try to go somewhere else in her mind to get through it until it was over.

... So when I go back to can I.S. tell you how many times it happened or every time? No, because it happened so many darn times.

She's doing what children do when she recalls sunlight on one particular occasion; I was wearing my dress, that same dress that's in this picture on one of the days that he molested

not called to testify about a child's recollection of events.  Appellant cites no case law to support his argument.  A review of the closing remarks reveals that nothing the prosecutor commented on was based on facts not in evidence.  In addition, the court instructed the jury that "[t]he opening and closing argument of counsel are designed to assist you.  They are not evidence."

{¶ 58} In summary, we do not find the prosecutor's closing remarks improper and, even assuming arguendo that they were, appellant makes no showing that they prejudicially affected his substantial rights.  Appellant's sixth assignment of error is without merit.

*State v. Salahuddin,* supra.

Because Petitioner's trial counsel failed to object to the prosecutor's statements during closing argument, he has procedurally defaulted his assertions in Ground Five. The Eighth District plain error review does not resurrect Petitioner's claims.  See *Scott,* supra; *Seymour*, supra; *Harris*, supra; *Bowling*, supra.  Accordingly, the undersigned recommends that the Court find that Petitioner procedurally defaulted his assertions in Ground Five.

However, even assuming *arguendo* that there was no procedural default, the prosecutor in this case did not support the credibility of the victim by indicating a personal belief that the victim was telling the truth, see *Johnson,* supra., or indicate that she had "special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony."  See *Francis*, supra.  The state argued that the victim's testimony alone, if believed, was sufficient to establish the elements of the alleged crimes.  The state further argued that, if the jury felt rage and disgust during the victim's testimony, it was likely that the jurors believed her testimony.  Accordingly, the state did not engage in  "improper vouching" for the victim's credibility in its closing argument, as that term has been defined in this Circuit.   Likewise, the prosecutor's observations about childhood recollections were not improper.  The prosecutor's comments were based upon common experience rather than psychiatric theory.

Furthermore, even assuming *arguendo* that the prosecutor's comments were improper, they were by no means flagrant.  Although her comments were made deliberately, they neither mislead

---

me. I remember certain places . . . She's telling you as vividly as she can the memories that are burned in her brain.

ECF Dkt. #15-6, Page ID# 2667-2671.

the jury nor prejudiced the defendant, and they were isolated rather than extensive.  Moreover, the victim provided compelling and detailed testimony regarding Petitioner's abuse.  As a consequence, the evidence against him was strong.

Therefore, the undersigned recommends that the Court conclude that the prosecutor did not engage in improper conduct with regard to her statements in closing argument, and, as a consequence, that Ground Five does not have merit.

**VII.    CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.

DATE: May 2, 2012

*/s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).